IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HENRY BLACK, MARY LOU BLACK, BLACKBALL PROPERTIES, LLC, | § § § | No. 600, 2014 |
| Petitioners Below/Appellants, | § § § | Court Below:  Superior Court of the State of Delaware, |
| v. | § § | in and for New Castle County |
| NEW CASTLE COUNTY BOARD OF LICENSE, INSPECTION AND REVIEW, NEW CASTLE COUNTY DEPARTMENT OF LAND USE, and GARY STAFFIERI and ADRIA CHARLES-STAFFIERI | § § § § § § | C.A. No. N13A-08-012 FWW |
| Respondents Below/Appellees. | § § | |

Submitted:  May 20, 2015
Decided:  June 29, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices; and **BOUCHARD**, [*] Chancellor, constituting the Court *en banc*.

Upon appeal from the Superior Court.  **AFFIRMED**.

Richard L. Abbott, Esquire, Abbott Law Firm, LLC, Hockessin, Delaware, for Appellants.

Marlaine A. White, Assistant County Attorney, New Castle County Office of Law, New Castle, Delaware, for Appellee Department of Land Use.

Gary Staffieri and Adria Charles Staffieri, Appellees, *Pro Se*.

**STRINE**, Chief Justice:

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

# I.    INTRODUCTION

This case arose when Henry and Mary Lou Black and Blackball Properties, LLC (collectively, the "Blacks"), challenged the Department of Land Use's decision to grant a change of use certificate to neighboring property owners, Gary Staffieri and Adria Charles-Staffieri (the "Staffieris"), to the New Castle County Board of License, Inspection and Review (the "Board"). The Staffieris had rented out the property for use as office space for approximately ten years before deciding to open an automobile detailing shop on the premises, which required them to obtain a change of use certificate from the Department.[1]  When the Staffieris first received their certificate from the Department, the Blacks successfully appealed and the Board reversed the Department's decision. But the Staffieris reapplied, the Department once again issued their certificate, and this time, the Board affirmed the Department's decision. The Blacks were unable to appeal the Board's decision to a reviewing court because the General Assembly has chosen not to provide that right to parties aggrieved by a Board decision. The Blacks therefore sought review through a petition for a writ of *certiorari* filed in the Superior Court. After granting the writ to bring up the record, the Superior Court affirmed the Board.

We review the Superior Court's decision to affirm the Board's ruling for legal error.[2]  Under the narrow scope of review applied by the Superior Court for a writ of

---

[1] *See* Opening Br., *Black v. Staffieri*, No. 462, 2013 (Del. Oct. 25, 2013).
[2] Christiana Town Center, LLC v. New Castle County, 2004 WL 2921830, at *1 (Del. Dec.16, 2004) ("We find…the [Superior Court] committed no legal error in denying certiorari review. We therefore affirm.").

1

*certiorari*, we conclude that the Superior Court correctly held that the Board's decision was not manifestly contrary to law, nor was it the result of procedural irregularity.[3] As we have long held, a petition for a writ of *certiorari* is not a substitute for a direct appeal, which must be authorized by the General Assembly. The Superior Court was therefore correct to adhere to the disciplined and more constrained review involved in considering a petition for *certiorari*. We therefore affirm.[4]

## II.    BACKGROUND

The long-standing nature of this dispute makes reciting the key facts succinctly difficult. On appeal, the Blacks base their argument on what they say is the Board's failure to consider one of a number of legal and factual arguments they presented during the course of a drawn-out and contentious administrative proceeding. The Blacks and their supporters made many objections before and during the course of the proceeding. But their primary argument was that the Staffieris did not have sufficient parking for their

---

[3] *See, e.g.*, *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (quoting Woolley, DELAWARE PRACTICE, VOLUME I, § 939) ("Review on certiorari is not the same as review on appeal because review on certiorari is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings. The reviewing court does not consider the case on its merits; rather, it considers the record to determine whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly. . . . A decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has 'proceeded illegally or manifestly contrary to law.'"); *Matter of Butler*, 609 A.2d 1080, 1081 (Del. 1992) ("[E]ven should review of the claims raised by the petition be appropriate, this Court's scope of review will be strictly limited. Thus, review is generally confined to jurisdictional matters, error of law or irregularity of proceedings which appear on the face of the record.") (internal quotation marks omitted).

[4] The Staffieris filed a brief, *pro se*, in this appeal, which the Blacks moved to strike. The Blacks' motion to strike the Staffieris' answering brief is denied as moot.

2

proposed use of the property under the Uniform Development Code (the "UDC").[5] Indeed, at the Board's first hearing involving these parties, the Blacks succeeded in reversing the Department's decision to grant the Staffieris' change of use certificate, because the Board determined that the Staffieris only had access to one parking space.[6] The Blacks even took concrete action to ensure that the Staffieris would be unable to access additional parking. To wit, the Blacks erected a concrete barrier to deny the Staffieris access to 14 parking spaces on adjacent property (the "Shared Parking Area").

Sometime coincident with the Blacks' initial appeal, the Staffieris went to the Court of Chancery to obtain a ruling about their right to use the shared parking spots. Even though the Court of Chancery issued its decision in that case while the Blacks' appeal before the Board was pending, the Board upheld the Blacks' objection because it found that it could only take into account facts in the record as of the time of the Staffieris' application. The Staffieris then filed another application and put squarely before the Department, and then the Board, the results of the Court of Chancery litigation, which were favorable to them and not the Blacks. In the Court of Chancery, the Staffieris obtained an injunction to remove the concrete barrier, secured a declaration that they had an equal right to use the 14 shared spots in the Shared Parking Area under a 1946 deed, and were awarded attorneys' fees for the Blacks' bad faith conduct.[7] After the Board reversed the Department's decision to grant their certificate, the Staffieris

---

[5] *See Black v. New Castle Cnty. Bd. of License*, 2014 WL 4955183, at *4 (Del. Super. Sept. 26, 2014).

[6] App. to Opening Br. at 268 (Board decision, May 9, 2013).

[7] *See Staffieri v. Black*, No. 7439-VCL, Post-Trial Order (Del. Ch. Oct. 24, 2012), *aff'd*, *Black v. Staffieri*, 2014 WL 814122 (Del. Feb. 27, 2014).

reapplied and attached the Court of Chancery's post-trial order. The Department again approved their application.

Despite the Court of Chancery's unequivocal determination that the Staffieris had equal rights to use the 14 parking spots in the Shared Parking Area,[8] the Blacks continued to argue that the Staffieris had no such rights while an appeal of the Court of Chancery decision was pending. They also argued that even if the Court of Chancery decision was correct, the Staffieris were still short the parking required by the UDC.

Only after another hearing, with the Court of Chancery's judgment in the record, did the Board affirm the Department's decision to grant the Staffieris' certificate. The Board concluded that it was persuaded by the Court of Chancery's declaration of the Staffieris' rights:

> The Board finds that the October 2012 decision by the Court of Chancery provides the Property with access to the appropriate number of parking spaces required under the UDC. The Board will not substitute its own interpretation of the 1946 Deed for that of the Court of Chancery in determining the scope of the Staffieris' easement. Moreover, the Board specifically declines to contravene any portion of the Court's October 2012 Order.[9]

## III. ANALYSIS

The Delaware General Assembly has not provided for any right of appellate review from a decision by the Board under the Administrative Procedures Act[10] or any other statute. The Blacks therefore proceeded in the Superior Court under a writ of *certiorari*. This Court has long made clear that a writ of *certiorari* is not a substitute for

---

[8] *See id.* at 1-2.
[9] App. to Opening Br. at 235 (Board decision, July 23, 2013).
[10] *See* 29 *Del. C.* § 10101, *et seq.*

a direct appeal provided under a statute like the APA: a writ of *certiorari* is "*not a substitute for, or the functional equivalent of, an appeal.*"[11] The standard for reviewing a petition for a writ of *certiorari* is "strictly limited"[12]: the reviewing court "may not weigh evidence or review the lower tribunal's factual findings."[13] Likewise, the reviewing court may not "consider the case on its merits."[14] As this Court has observed, "[u]nder principles of law well established in this State, *certiorari* involves a review of only such errors as appear on the face of the record being considered."[15]

By its nature, the extent of the record appropriate for review on a writ of *certiorari* is limited: "A *certiorari* proceeding differs fundamentally from an appeal in that the latter brings the case up on its merits while the . . . (former) brings up the record only so that the reviewing court can merely look at the regularity of the proceedings."[16] The proper record for review is "limited to the complaint initiating the proceeding, the answer or response (if required), and the docket entries."[17] Any "evidence received in the inferior court is not part of the record to be reviewed."[18] This Court has thus stated that the

---

[11] *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1213 (Del. 2008) (citing *DuPont v. Family Ct. for New Castle Cnty.*, 153 A.2d 189, 194 (Del. 1959)).
[12] *Matter of Butler*, 609 A.2d 1080, 1081 (Del. 1992).
[13] *Reise v. Bd. of Bldg. Appeals of City of Newark*, 746 A.2d 271, 274 (Del. 2000); *see also 395 Assocs. v. New Castle Cnty.*, 2006 WL 2021623, at *8 (Del. Super. July 19, 2006) ("The Court 'may not review the substantive decisions' nor may it 'correct a mistake of facts or an erroneous conclusion from the facts, even though the [tribunal's] interpretation of the facts or law may have been erroneous.'") (quoting *El Di, Inc. v. J.P. Ct. No. 17*, 1998 WL 109823, at *4 (Del. Super. Feb. 20, 1998)).
[14] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 2921830, at *2 (Del. 2004) (citing *Reise*, 746 A.2d at 274)).
[15] *Maddrey*, 956 A.2d at 1215.
[16] *Shoemaker v. State*, 375 A.2d 431, 437 (Del. 1977) (internal quotation marks omitted).
[17] *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1216 (Del. 2008).
[18] *DuPont v. Family Ct. for New Castle Cnty.*, 153 A.2d 189, 194 (Del. 1959)).

transcript of the proceedings is not a proper part of the record, at least in the context of *certiorari* review of a Justice of the Peace Court proceeding.[19] The reviewing court is then limited to determining based on that limited record whether the lower tribunal: "(i) exceeded its jurisdiction;" (ii) "proceeded illegally or manifestly contrary to law"; or (iii) "proceeded irregularly."[20] Reversible procedural irregularity includes a tribunal's failure to create an "adequate record" for judicial review.[21]

The Superior Court in this case properly recognized that a writ of *certiorari* is a very limited tool, and determined that the Blacks had not met their burden to show that the Board made any legal errors manifest on the face of the record or proceeded irregularly.[22] In so ruling, the Superior Court refused to treat the Blacks' *certiorari* petition as a license to review the entire administrative record to determine if the Board made an error of law.[23]

---

[19] *Maddrey*, 956 A.2d at 1216 ("[T]he official record delivered by the Justice of the Peace Court to the Superior Court in response to the issuance of a common law writ of *certiorari* does not properly include a transcript of the evidentiary proceedings."). Even though the record does not include a transcript of the evidentiary proceedings, the reviewing court can and should consider the hearing transcript to the extent it contains the decision of the Board. *See, e.g.*, *Matter of Butler*, 609 A.2d 1080, 1082 (Del. 1992) (holding that only the order of the court holding Butler in contempt, not the full transcripts of the proceedings, were properly part of the record for *certiorari* review).

[20] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (citing 1 Victor B. Woolley, WOOLLEY ON DELAWARE PRACTICE, § 896; 939 (1906)).

[21] *Id*. ("A decision will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review.").

[22] *Black v. New Castle Cnty. Bd. of License*, 2014 WL 4955183, at *3 (Del. Super. Sept. 26, 2014).

[23] *See id*., at *8 (quoting *395 Assocs., LLC v. New Castle Cnty.*, 2006 WL 2021623, at *8 (Del. Super. July 19, 2006)) ("Petitioners contend that the calculation of the number of available parking spaces mandated by the UDC is incorrect. However, even if Petitioners are correct, upon *certiorari* review, the Court cannot correct miscalculations.").

In their petition for a writ of *certiorari*, the Blacks assert that the Staffieris have no right to use the 14 shared spots in the Shared Parking Area. This contention, a subsidiary to their original primary contention before the Board, rests on an argument that even if the Staffieris had legal right to the 14 spaces in the Shared Parking Area, plus one space on their own property, these spaces would still be insufficient to support the Staffieris' proposed use. The Blacks contend that there are not enough spaces available in the Shared Parking Area to support their own existing parking needs, although their deficiency has been considered grandfathered. Because the Staffieris seek to use their property in a new way, the Blacks argue the shared spots cannot count toward their requirement, regardless of whether the Staffieris have an equal legal right to access them, which the Blacks took efforts to impede.

It may be that this argument, upon consideration on a direct appeal, would be found to have merit. But this is not a direct appeal. The Blacks seek a writ of *certiorari* because the General Assembly has decided that no right of direct appeal should exist from the Board under the APA or a similar statute. In cases like these, it is always tempting for a court, including our own, to stray from the disciplined contours governing a petition for a writ.[24] But to do so undermines the General Assembly's authority to determine which administrative agencies are subject to direct appeal and which are not.

---

[24] The Blacks cite a case that has language that can be read as reflecting that temptation. In *Reise v. Board of Building Appeals of City of Newark*, 746 A.2d 271 (Del. 2000), there is summative language that suggests that typical issues of law can be reviewed on a petition for *certiorari*, but that language must be read in the context of the entire case. The Court emphasized in its decision that "[f]irst, and foremost, the petitions allege (and the record confirms) that the Board failed to provide statements of the reasons for its decisions. It is settled law that a quasi-judicial

7

Historically, a petition for a writ of *certiorari* has not allowed a reviewing court to consider the full record before the first tribunal or to conduct a plenary review of whether the tribunal committed an error of law.[25]  Only if an error of law is manifest on the face of the limited record is *certiorari* appropriate, because the writ exists to ensure that the tribunal is proceeding regularly and attempting to do its job within its legal authority.[26] Here, it is plain that the Board took the arguments before it seriously, held several hearings, and received evidence from all sides.

Moreover, the dispute before the Board was contentious and factually complex, as the briefs before us illustrate.  A number of factual disputes exist between the parties, even now, as to the number of parking spots available to the Staffieris, the Blacks, and other neighboring property owners.  These factors further caution against reversing the Board's written decision, which appears to have been based on a careful review of the long and complicated background of this case.  The Blacks insist that the decision by the Board can only be rationalized as an error of law.  But the only way for us to reach that conclusion would be to delve deeply into the record, which would disregard the

tribunal must state the basis for its decision, in order to allow judicial review." *Id*. at 274.  The Court ultimately granted *certiorari* because the Board had failed to make any record of its proceedings or give any explanation of its decision.  By contrast, in this case, the Board both held extensive hearings on the record and issued a formal written decision.  Nonetheless, to the extent that aspects of *Reise* or other cases can be read as inconsistent with the constrained view of *certiorari* review we take today, those cases are overruled only to that extent.

[25] *See, e.g.*, *Shoemaker v. State*, 375 A.2d 431, 437 (Del. 1977) ("A *certiorari* proceeding differs fundamentally from an appeal in that the latter brings the case up on its merits while the . . . (former) brings up the record only so that the reviewing court can merely look at the regularity of the proceedings.") (internal quotation marks omitted).

[26] *See Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1106 (Del. 2003) ("The purpose of *certiorari* is to correct errors of law, to review proceedings not conducted according to law, and to restrain an excess of jurisdiction.") (internal quotation marks omitted).

appropriate standard of *certiorari* review and treat this as a direct appeal. Administrative agencies are, of course, expected to give reasons for their decisions, as the Board did here, but they are not to be faulted for failing to write judicial-style opinions.

After the Blacks' primary argument against the Staffieris' application was eliminated by their decisive and expensive loss in the Court of Chancery, the Blacks reverted to other arguments, including the one that they now highlight to us. Given that the Court of Chancery's ruling found that the Staffieris had equal legal right to 14 spots with their neighbors, plus at least one spot on their own property, we find it impossible to find any manifest error on the face of the record in the Board's decision that the Staffieris had access to at least four parking spaces. The UDC vests the Department with considerable discretion, including whether to waive certain requirements when appropriate.[27] The Board on review was faced with a situation where the applicant was required to expend substantial resources and time to prove that it had as much right to use the Shared Parking Area as its neighbors, and had to obtain an injunction to remove concrete barriers erected by the Blacks in what the Court of Chancery determined was bad faith pre-litigation conduct.[28] The Board made clear that it was unwilling to ignore the property rights of the Staffieris declared by the Court of Chancery, after appearing to carefully consider the facts about the effect of the proposed use on the community in evaluating whether the Staffieris' application should be granted. As the Superior Court

---

[27] *See* New Castle County Code, § 40.22.610(B) ("The Department may, upon request in writing, waive or reduce any of the requirements listed in this Division where the standard is determined to not be applicable. . . .").

[28] *See Staffieri v. Black*, No. 7439-VCL, Post-Trial Order at 11 (Del. Ch. Oct. 24, 2012), *aff'd*, *Black v. Staffieri*, 2014 WL 814122 (Del. Feb. 27, 2014).

9

pointed out, it is apparent that the Board was aware of the relevant UDC provisions and focused on the complicated facts of the case.[29]

Like the Superior Court, we do not perceive any manifest error of law on the face of the record. In fact, the Blacks' argument that an error of law occurred seeks to send us off on the kind of deep, Cousteau-like exploration of a complicated administrative record that is appropriate only on a direct appeal, not an application for a writ of *certiorari*. In other words, the Blacks cannot point to any manifest error of law that emerges on the surface of the record, which is what is required to obtain a writ of *certiorari*.[30] Like the Superior Court, we also decline to speculate that the Board's decision turned on an error of law rather than a factual disagreement with the Blacks, or a determination that the equities of the situation made it unfair to literally apply the UDC, when the Staffieris had shown that they had as much legal right to use the 14 parking spaces in the Shared Parking Area as those seeking to deny their application.

We therefore affirm the Superior Court's judgment affirming the Board's decision.

---

[29] *See Black v. New Castle Cnty. Bd. of License*, 2014 WL 4955183, at *6-7 (Del. Super. Sept. 26, 2014).

[30] *See, e.g.*, *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1215 (Del. 2008); *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1106 (Del. 2003).